MONTGOMERY LAW GROUP
Bradley R. Flynn, Esq.
NJ ID 173362016
1420 Locust Street, Suite 420
Philadelphia, PA 19012
Phone: 215-650-7563
Bradley@ed-law.com

*Attorneys for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT,
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Johanna Burke., in her individual capacity and as parent and natural guardian of Aidan Burke., and Aidan Burke, in his individual capacity, | : <br> : <br> : <br> : <br> :    Docket No. 1:25-cv-18037 |
| Plaintiffs, | : <br> :    JURY TRIAL DEMANDED |
| Vs. | :    CIVIL ACTION-LAW |
| Durand Academy and Community Services, Inc., Jennifer Amoroso, Krysten Pierce, Dagney Scott, Dwithheld (first name TBD), and Ahnonda (last name TBD) Defendants. | : |

---

## <u>VERIFIED  COMPLAINT</u>

Plaintiffs by and through their undersigned attorneys, bring this Complaint against the

above-named Defendants, agents, and successors in office, to safeguard their rights under the

United States Constitution, State, and Federal law, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1. Plaintiff Aidan Burke is a twenty-two-year-old man with profound intellectual disabilities and severe, life-threatening medical conditions.

2. Mr. Burke is diagnosed, *inter alia*, with severe autism spectrum disorder; a seizure disorder (he can have grand-mal seizures at any time); bipolar depression; severe global and verbal apraxia; severe sensory integration disorder; Digeorge syndrome, which is an immuno-deficiency disease, where his body does not produce enough antibodies to fight off infections; obsessive compulsive disorder; and anxiety.

3. Because of the severity of Mr. Burke's disabilities, the Hawthorne School District placed him at Durand Academy ("the "School," "Durand," or "Defendant") through an individualized education program ("IEP"), because it could not program in district for his needs. Thus, due to the complexity of his needs, Hawthorne placed him at Durand through an IEP.

4. On or around January 14, 2024, an employee of Durand informed Ms. Burke that several staff members were abusing her son. Most notably, the employee informed Ms. Burke that several staff members held Mr. Burke down, while another staff member twisted his arm out his socket, dislocating his shoulder. The employee informed Ms. Burke that the co-Defendant classroom aides dislocated Mr. Burke's shoulder on December 5, 2023.

5. The reported abuse took place between October and December 2023.

6. After the employee reported the assault and dislocated shoulder, Durand terminated her employment. Upon information and belief, Durand terminated the employee because she made the report of the assault.

7. The ongoing abuse, including the dislocated shoulder, is the direct and proximate cause of the Plaintiffs' harm.

## JURISDICTION AND VENUE

8. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiff brings claims arising under federal law.

9. Upon information and the belief, the Durand is a federal funds recipient.

10. This court has supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

11. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

12. Ms. Johanna Burke is an adult individual and the Parent and natural guardian of Plaintiff Aidan Burke. Plaintiff Johanna Burke presently resides at 58 11th Avenue, Hawthorne, NJ 07506. Ms. Burke has guardianship of Aidan Burke, as Aidan Burke is an adult individual with several developmental disabilities and medical conditions.

13. Mr. Aidan Burke is an adult individual with disabilities and, who by reason of his disabilities, resides in a group home, which is located at 302 West Maine Street, Bergenfield, NJ 07621. The group home is run by a state-lincensed agency.

**Defendants:**

14. Defendant Durand Academy is a business entity, which is believed to be doing business at 230 N Evergreen Ave., Woodbury, NJ 08096.

15. Defendant Principal Jennifer Amoroso is a supervisor and principal overseeing instruction and programming at Defendant Durand Academy and is believed to be doing business at 230 N Evergreen Ave., Woodbury, NJ 08096.

16. Defendant Krysten Pierce is a paraprofessional who is employed at Defendant Durand Academy and is believed to be doing business at 230 N Evergreen Ave., Woodbury, NJ 08096.

17. Defendant Dagney Scott is a paraprofessional who is employed at Defendant Durand Academy and is believed to be doing business at 230 N Evergreen Ave., Woodbury, NJ 08096.

18. Defendant Ahnonda (last name TBD) is a paraprofessional who is employed at Defendant Durand Academy and is believed to be doing business at 230 N Evergreen Ave., Woodbury, NJ 08096.

19. Defendant Dwithheld (first name TBD) is a paraprofessional who is employed at Defendant Durand Academy and is believed to be doing business at 230 N Evergreen Ave., Woodbury, NJ 08096.

## FACTUAL ALLEGATIONS

20. Plaintiff Aidan Burke is a twenty-two-year-old man with profound intellectual disabilities and severe, life-threatening medical conditions.

21. Mr. Burke is diagnosed, *inter alia*, with severe autism spectrum disorder; a seizure disorder (he can have grand-mal seizures at any time); bipolar depression; severe global and verbal apraxia; severe sensory integration disorder; Digeorge syndrome, which is an immuno-deficiency disease, where his body does not produce enough antibodies to fight off infections; obsessive compulsive disorder; and anxiety.

4

22. Mr. Burke is non-verbal and cannot communicate his wants and needs.

23. Due to the combination of these disabilities, Mr. Burke is considerably medically-fragile and, therefore, is at risk of sickness and injury.

24. Starting in September 2018, the Hawthorne Public School District placed Mr. Burke at Durand through an IEP.

25. Because Mr. Burke was in special education, he was entitled to attend Durand until he was age twenty-one.

26. Mr. Burke graduated from Durand in June 2024.

27. Starting in October 2023, and continuing through December 2023, an employee at Durand observed several classroom aides abusing Mr. Burke. These classroom aides included co-Defendants Pierce, Ahnonda, Scott, and Dwithheld.

28. The employee observed that co-Defendants Pierce, Ahnonda, Scott, and Dwithheld would shove Mr. Burke "hard in the chest" to force him to sit. This same employee noted that these same co-Defendants often forced him to sit or would shove him.

29. More specifically, the employee observed Defendants Pierce and Ahnonda hold Mr. Burke down, while Defendant Scott twisted Mr. Burke's arm and held it behind his back. It was reported to Ms. Burke that Defendant Scott injured and dislocated Mr. Burke's shoulder when she twisted it.

30. The employee reported that after Defendant Scott dislocated Mr. Burke's shoulder, she reset it. Upon information and belief, Defendant Scott is not a medical doctor or a nurse and, therefore, lacked the proper training, certifications, and licensure to reset Mr. Burke's arm. Additionally, upon information and belief, Defendant Scott was not

operating under the direction and supervision of a medical doctor when she reset Mr. Burke's dislocated shoulder.

31. Upon information and belief, Defendant Scott aggravated Mr. Burke's injury when she reset his shoulder. Upon information and belief, she did not have any privilege to make contact with Mr. Burke to reset his dislocated shoulder.

32. The employee reported that the co-Defendant classroom aides dislocated Mr. Burke's shoulder on or around December 5, 2023.

33. The employee reported that Mr. Burke was screaming when they twisted his arm and dislocated his shoulder.

34. None of the employees called 9-1-1 after Defendant Scott dislocated Mr. Burke's shoulder.

35. The employees did not report the dislocated shoulder to the school nurse. As such, the school nurse never provided any treatment to Mr. Burke.

36. In November 2023, the employee reported that the co-Defendant classroom aides would restrain Mr. Burke by holding his hands at his sides, while another aide stood on his feet and held his wrists. This restraint was performed while Mr. Burke was seated and to keep him in his chair.

37. The employee reported that, in December 2023, that while Mr. Burke was sitting at his desk, Defendant Pierce twisted Mr. Burke's arm behind his back. While she twisted his arm, Defendant Anonda shoved his head forward and dug her nails into his scalp.

38. During this same incident, when Mr. Burke leaned to the side, Defendant Scott shoved his head and bent his hand back.

39. On other occasions, which spanned from October to December 2023, the employee reported that Defendant Pierce shoved Mr. Burke into his desk whenever he drooled. The employee reported that Defendant Pierce would become annoyed at Mr. Burke for drooling and would shove him into his chair in response. It should be noted that Mr. Burke's drooling is a manifestation of his disability.

40. On other occasions, which spanned from October to December 2023, the employee reported that Defendant Pierce would force Mr. Burke to repeatedly pick up a heavy backpack off of a hook, place it on the ground, and put it back on the hook again. This was not part of any of Mr. Burke's IEP goals.

41. Throughout the time that spanned October to December 2023, Defendants Dagney and Pierce would confine Mr. Burke to his chair. This involved Defendant Pierce holding Mr. Burke on both sides of his body, while Defendant Dagney stood on his feet and held his wrists, so he could not leave his chair.

42. Throughout the time that spanned October to December 2023, Defendants Dwitheld and Ahnonda withheld food from Mr. Burke during his lunch on numerous occasions.

43. Throughout the time that spanned October to December 2023, the employee reported that the co-Defendant aides also pulled on Mr. Burke's arm hairs as a punishment.

44. The employee reported that the co-Defendant aides denied Mr. Burke access to the restroom on December 8, 2023.

45. Additionally, on this same date, the co-Defendant aides repeatedly shoved Mr. Burke into his chair if he tried to walk around the room or they would pull him back to his seat.

46. After the employee made reports about the abuse to Durand, it fired her. Upon information and belief, it fired her because she made the reports of abuse.

47. The employee also reported the abuse to Ms. Burke.

48. It is notable that Mr. Burke's IEP only allows for restraints in limited circumstances. None of these circumstances applied to the use of restraints employed by Durand and the other co-Defendants. In other words, the IEP did not allow for the co-Defendants to restrain Mr. Burk by, *inter alia*, confining him to his chair, shoving him into his chair, and denying him access to the bathroom.

49. Even after the co-Defendants employed these restraints, they never informed Ms. Burke in writing that they restrained Mr. Burke, the reason for the restraints, or that there was a safety concern. In addition, per the observations of the employee, none of the restraints were safely applied. Furthermore, Durand never discussed the restraint at any of the IEP meetings.

50. Defendant Principal Amoroso was made aware of the ongoing abuse of Mr. Burke. A Durand employee specifically reported the abuse to Defendant Amoroso, who refused to intervene. Upon information and belief, the refusal to intervene with the ongoing abuse was part of a larger coverup of the abuse.

51. Upon information and belief, Principal Amoroso, *inter alia*, falsified an internal investigation report. More specifically, Defendant Amoroso falsely indicated that the teachers called the nurse. The classroom staff, however, never called in the nurse.

52.  In addition, Defendant Amoroso failed to document that an employee reported that Defendant Scott reset Mr. Burke's dislocated shoulder.

53. Upon information and belief, Defendant Amoroso failed to properly document the injuries and nurse's involvement as part of an effort to cover up the conduct of the co-Defendant classroom aides and teacher.

54. To make matters worse, an employee reported that Defendant Amoroso was instrumental in firing the school nurse approximately one week after the incident in the classroom.

55. Defendant Amoroso informed Plaintiff Ms. Burke that she called the Division of Child Protection and Permanency ("DCP&P") and that she called the Division of Developmental Disabilities ("DDD") to report the abuse allegations. Upon information and belief, Defendant Amoroso never made any reports to either agency, despite being a mandated reporter, per N.J.S.A. §9:6-8.10.

56. The co-Defendants and administrators knew or should have known that Mr. Burke had a federal right to attend school without being subjected to disability-based discrimination. Durand is an approved private school for children with special needs in New Jersey.[1] Additionally, children are often placed in Durand on IEP's, which are governed by the Individuals with Disabilities Education Act. 20 U.S.C.S. § 1400. This is a statute that expressly provides for programming for children with disabilities. *Id.* Upon information and belief, the administration at Durand was aware that it had to follow the anti-discrimination provisions of the ADA and the Rehabilitation Act, as the School is an approved private school. In fact, the New Jersey Special Education Regulations require that each approved private school for children with disabilities submit "An affidavit that its programs and services for students with disabilities are . . . in compliance with N.J.S.A. 18A:46-1 *et seq*., N.J.A.C. 6A:14, IDEA (20 U.S.C. §§ 1400 *et seq.*), and the Rehabilitation Act of 1973 (U.S. P.L. 93-112 Section 504, 29 U.S.C. § 794a)." N.J.A.C. 6A:14-7.2 (3)(i).

57. As applied here, Durand knew or should have known that it was required to comply with the Rehabilitation Act. Furthermore, because it agreed to program for Mr. Burke's

---

[1] *See* https://homeroom6.doe.state.nj.us/apssdschooldirectory/searchByCounty/Gloucester

disabilities, it stands to reason that it was more than aware of his federal rights to attend school free from disability-based discrimination.

58. Upon information and belief, despite being aware of Mr. Burke's federally protected rights to attend school free from disability-based discrimination, Durand allowed its staff to interfere with his ability to access the benefits of his program on the basis of his disability through the ongoing abuse.

59. Durand, moreover, was deliberately indifferent to Mr. Burke's rights and/or intentionally discriminated against him.

60. The abuse at the school denied Mr. Burke access to the benefits of his education. Because he was in pain or was forced to attend school under the threat of physical harm and abuse, he was not able to fully participate in his program, which was designed to address his needs as a student with disabilities.

61. The ongoing abuse and discrimination has resulted in both Plaintiffs enduring emotional anguish. Both Plaintiffs have sought treatment to address the harm.

62. The Defendants' tortious conduct and discrimination is the direct and proximate cause of the Plaintiffs' harm and damages.

63. This Civil Complaint now follows.

## <u>Count 1</u>
### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### *Mr. Aidan Burke v. Durand Academy*

64. Plaintiff Mr. Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

65. The Americans with Disabilities Act ("ADA") prohibits discrimination against qualified individuals with disabilities on the basis of their disability. 42 U.S.C. §§ 12161, 12132.

To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of her disability." *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013).

66. Defendant Durand discriminated against and denied Mr. Burke access to the benefits to his program, under the Americans with Disabilities Act.

   a. Mr. Burke is recognized as a person with disabilities, which, again, includes *inter alia*, severe autism spectrum disorder; a seizure disorder, bipolar depression; severe global and verbal apraxia; severe sensory integration disorder; Digeorge syndrome; obsessive-compulsive disorder; and anxiety.

   b. Durand is a place of public accommodation.

   c. Mr. Burke is otherwise qualified to participate in the program, as Durand is an approved private school for students with disabilities.

   d. Defendant denied Mr. Burke the benefits of his program in several ways, as pleaded in ¶¶27-62.

   e. Defendant knew or should have been aware that Mr. Burke was entitled to attend its program free from disability-based discrimination. Again, Durand is an approved private school for children with special needs in New Jersey.[2] Additionally, children are often placed in Durand on IEP's, which are governed by the Individuals with Disabilities Education Act. 20 U.S.C.S. § 1400. This is a statute that expressly provides for programming for children with disabilities. *Id.* Upon information and belief, the administration at Durand was aware that it had

---

[2] *See* https://homeroom6.doe.state.nj.us/apssdschooldirectory/searchByCounty/Gloucester

to follow the anti-discrimination provisions of the ADA, as the School is an approved private school

f.  As applied here, Durand knew or should have known that it was required to comply with the anti-discrimination provisions of the ADA. Furthermore, because it agreed to program for Mr. Burke's disabilities, it stands to reason that it was more than aware of his federal rights to attend school free from disability-based discrimination.

g.  Though an employee reported the abuse and discrimination, Durand refused to address and, instead, terminated her employment.

h.  In fact, Durand denied that any of the conduct had taken place and refused to offer any supportive measure or other corrective action.

i.  Durand's deliberate indifference interfered with Mr. Burke's ability to access his program as pleaded in ¶¶50-54.

67. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied Mr. Burke the benefits of his program on the basis of his disability.

68. Wherefore, Mr. Burke prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

### Count 2
### DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT
#### *Mr. Aidan Burke v. Durand Academy*

69. Plaintiff Mr. Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

70. To establish a prima facie case under the §504 of the Rehabilitation Act ("RA")[3], a party must show: (a) they were a person with a disability; (b) they were otherwise qualified for participation in the program; (c.); the program they are challenging receives federal financial assistance; and (d.) they were subject to discrimination solely on the basis of their disability. *Hornstine v. Township of Moorestown,* 263 F. Supp. 2d 887, 905 (D.N.J 2003).

    a. Mr. Burke is recognized as a person with disabilities, which, again, includes, *inter alia*, severe autism spectrum disorder; a seizure disorder, bipolar depression; severe global and verbal apraxia; severe sensory integration disorder; Digeorge syndrome; obsessive-compulsive disorder; and anxiety.

    b. Durand is a place of public accommodation.

    c. Upon information and belief, Durand is a federal funds recipient.

    d. N.J.A.C. 6A:14-7.2 (3)(i) requires that Durand sign an affidavit that it will comply with the Rehabilitation Act.

    e. Mr. Burke is otherwise qualified to participate in the program, as Durand is an approved private school for students with disabilities.

    f. Defendant Durand denied Mr. Burke the benefits of his program in several ways. as pleaded in ¶¶27-62.

    g. Though an employee reported the abuse and discrimination, Defendant refused to address and, instead, terminated her employment.

    h. In fact, Durand denied that any of the conduct had taken place and refused to offer any supportive measure or other corrective action.

---

[3] *See* 29 U.S.C. § 794(a).

i. The Defendant knew or should have been aware that Mr. Burke was entitled to attend its program free from disability-based discrimination. Again, Durand is an approved private school for children with special needs in New Jersey.[4] Additionally, children are often placed in Durand on IEP's, which are governed by the Individuals with Disabilities Education Act. 20 U.S.C.S. § 1400.

j. As applied here, Durand knew or should have known that it was required to comply with the Rehabilitation Act. Furthermore, because it agreed to program for Mr. Burke's disabilities, it stands to reason that it was more than aware of his federal rights to attend school free from disability-based discrimination.

k. Durand's deliberate indifference interfered with Mr. Burke's ability to access his program as pleaded in ¶¶50-54.

71. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied Mr. Burke the benefits of his program on the basis of his disability.

72. Wherefore, Mr. Burke prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 3**
**NEW JERSEY LAW AGAINST DISCRIMINATION**
*Mr. Aidan Burke v. Durand Academy*

73. Plaintiff Mr. Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

74. The NJLAD prohibits discrimination on the basis of disability. N.J. Stat. Ann. § 10:1-2.

75. The NJLAD also protects students from a hostile learning environment.

---

[4] *See* https://homeroom6.doe.state.nj.us/apssdschooldirectory/searchByCounty/Gloucester

76. Mr. Burke is entitled to attend school at Durand and to receive services there without facing discrimination on the basis of his disability.

77. Defendants denied Mr. Burke the benefits of his program in several ways, as pleaded in ¶¶ 27-62.

78. Defendants further discriminated against Mr. Burke when it subjected him to a hostile environment, which included the co-Defendants physically abusing him and dislocating his shoulder, along with failing to take action to stop the abuse.

79. As a direct and proximate result of Defendant Durand's deliberate indifference and intentional discrimination, it denied Plaintiff the benefits of his program.

80. Wherefore, Mr. Burke prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 4**
**NEW JERSEY LAW AGAINST DISCRIMINATION-*aiding and abetting***
***Mr. Aidan Burke v. Defendant Jennifer Amoroso***

81. Plaintiff Mr. Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

82. Plaintiff asserts that Principal Amoroso was made aware of the ongoing abuse of Mr. Burke. A Durand employee specifically reported the abuse to Principal Amoroso, who refused to intervene. Upon information and belief, the refusal to intervene with the ongoing abuse was part of a larger coverup of the abuse.

83. Upon information and belief, Principal Amoroso aided and abetted the co-Defendants' tortious and discriminatory conduct, which, included, *inter alia*, falsifying an internal investigation report. More specifically, Defendant Amoroso falsely indicated that the teachers called the nurse. The classroom staff, however, never called in the nurse. In

addition, Defendant Amoroso failed to document that an employee reported that Defendant Scott reset Mr. Burke's dislocated shoulder.

84. Upon information and belief, Defendant Amoroso failed to properly document the injuries and nurse's involvement as part of an effort to cover up the conduct of the co-Defendant classroom aides and teacher.

85. To make matters worse, an employee reported that Defendant Amoroso was instrumental in firing the school nurse approximately one week after the incident in the classroom.

86. Principal Amoroso's aiding and abetting of the abuse only served to further deny Mr. Burke the ability to access his program on the basis of his disabilities, and to receive redress for the harm.

87. Without properly reporting the harm, including discussing it at an IEP meeting, there was no way to adjust Mr. Burke's programming to ensure that he could continue to access his program. The IEP is the central document to ensure that students with disabilities are able to access their education. By failing to address the abuse and restraints through the IEP process and reporting, Defendant Amoroso prevented Mr. Burke from being able to fully access his program.

88. Defendant Amoroso's aiding and abetting of the abuse subjected Mr. Burke to a hostile learning environment. This hostile learning environment barred Mr. Burke from accessing his program as a person with disabilities.

89. As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, Defendant denied the Plaintiff access to the benefits of his program.

90. Wherefore, Mr. Burke prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**<u>COUNT 5.</u>**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*Mr. Aidan Burke v. All Defendants*

91. Plaintiffs Mr. Burke and Ms. Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

92. Defendants committed the tort of intentional infliction of emotional distress against Mr. Burke:

    a.  Defendants acted intentionally and recklessly.

    b.  Defendants' conduct was extreme and outrageous, exceeding the bounds of decency and, thus, was utterly intolerable in civilized society.

    c.  Defendants subjected Mr. Burke to ongoing physical abuse, which included dislocating his shoulder and illegal restraints.

    d.  The emotional distress, additionally, resulted from staff withholding food from Mr. Burke and denying him access to the bathroom.

    e.  Defendants should have been aware of his vulnerability and susceptibility to injuries as a person with profound disabilities and who is medically fragile.

    f.  The emotional distress Mr. Burke has suffered is so severe that no reasonable person could be expected to endure such distress.

    g.  Ms. Burke is now seeking psychiatric services, medical treatment, and psychological services.

    h.  Mr. Burke has also presented with the physical and medical manifestations of emotional distress, including increased anxiety and mental anguish. Mr. Burke has also experienced an increase in seizures and is undergoing medical treatment as a result.

    i.  Mr. Burke is now treating with a psychiatrist and related medical treatment.

93.  Mr. Burke has suffered damages as a result of the emotional distress.

94. Wherefore, the Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 6.
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *Ms. Johanna Burke v. All Defendants*

95. Plaintiff Ms. Johanna Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

96. Defendants negligently inflicted severe emotional distress on Ms Burke:

    a.  Defendants' conduct caused physical harm and bodily injury to Mr. Burke.

    b.  Defendants' conduct caused neglect, abuse, and the degradation of Mr. Burke, as a person with profound disabilities.

97. Ms. Burke witnessed the aftermath of the trauma of the injuries, abuse, neglect, and degradation of her son.

98. Ms. Burke experienced severe emotional distress from observing Mr. Burke's injury, pain, and emotional response.

99. As a direct and proximate result of Defendants' negligent infliction of emotional distress, Ms. Burke suffered severe emotional harm, which has included depression, sleep disruption, and loss of appetite. Ms. Burke is now seeking psychiatric and psychological services to address the emotional distress.

100.    Wherefore, the Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

## COUNT 7.
### NEGLIGENT HIRING, RETENTION, FAILURE TO TRAIN
*Mr. Aidan Burke and Ms. Johanna Burke v. Durand Academy*

101.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this

complaint and incorporate them herein.

102.    Defendant Durand had a duty to exercise ordinary care when hiring, training, and

supervising their staff who work with persons with severe disabilities.

103.    Defendant had an obligation to train its staff and other persons in its employ,

including the co-Defendants.

104.    Defendant knew or should have known that it was important to screen and only hire

staff, who are qualified to work with persons with disabilities; who would not engage in

abusive and neglectful behavior with persons with disabilities; who would not pull the

arm hairs or illegally restrain persons with disabilities; who twist their arm to the point it

dislocates from the shoulder; or who engage in the unauthorized practice of medicine

when a classroom aide reset Mr. Burke's dislocated shoulder.

105.    Defendant's lack of oversight, failure to properly train, failure to supervise, and

failure to monitor its staff, and their failure to protect vulnerable persons with profound

disabilities, is a direct and proximate cause of the Plaintiffs' damages, as set forth in the

factual averments.

106.    Wherefore, the Plaintiffs pray for relief against the Defendants as hereinafter set forth

in the prayer for relief.

## COUNT 8
### NEGLIGENCE
*Mr. Aidan Burke and Ms. Johanna Burke v. Durand Academy*

107.    The Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this

complaint and incorporate them herein.

108.    Defendants owed a duty of care to Mr. Burke to safeguard them from harm as pleaded in ¶¶27-62.

109.    Defendants breached that standard of care when they allowed Mr. Burke, a person with severe disabilities, to be harmed, as pleaded in ¶¶27-62.

110.    The Defendant's conduct is both the direct and proximate cause of the Plaintiffs' harm.

111.    The Defendants have caused the Plaintiffs' damages in the form of medical care, psychiatric care, and other related damages.

112.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 9**
**PER SE NEGLIGENCE**
*Mr. Aidan Burke and Ms. Johanna Burke v. Durand Academy*

113.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

114.    Defendant Durand owed a statutory and regulatory duty of care to protect persons with disabilities against the imposition of harm and personal injury to their person.

115.    More specifically, Durand owed a duty of care to avoid employing restraints against Mr. Burke.

116.    Defendant breached the standard of care, as set forth in N.J.S.A. 18A:46-13.5, when it restrained Mr. Burke numerous times between October and December 2023, as none of the incidents involved an emergency or a risk of harm to Mr. Burke or anyone in the class; when the staff failed to employ safe restraint techniques, as Mr. Burke was injured on these occasions; upon information and belief, the staff were not trained in restraint;

when Durand failed to timely notify Ms. Burke of the restraints; when it failed to convene an IEP meeting discuss the restraints; when it failed to provide documentation of the restraints; when it, upon information and belief, failed to properly document the restraints; and when it failed to monitor the restraints to ensure that Mr. Burke was not injured, which included dislocating his shoulder.

117.    N.J.S.A. 18A:46-13.5 applies to approved private schools. Durand is an approved private school and, therefore, is subject to the standard set forth in this statute.

118.    The Defendant's failure to comply with the standards set forth in N.J.S.A. 18A:46-13.5 resulted in Mr. Burke's injuries, which included, *inter alia*, a dislocated shoulder and emotional distress.

119.    The Defendants failure to comply with these statutes is the direct and proximate cause of the Plaintiffs' harm and damages.

120.    The Plaintiff has suffered medical damages, emotional distress, and other damages, as result of the Defendants breaching these standards of care.

121.    Wherefore, the Plaintiffs pray for relief against the Defendant as hereinafter set forth in the prayer for relief.

**COUNT 10**
**PER SE NEGLIGENCE--*Unauthorized Practice of Medicine.***
***Mr. Burke v. Defendant Scott***

122.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

123.    Defendant Scott owed a statutory and regulatory duty of care to not engage in the unauthorized practice of medicine.

124.    Defendant Scott breached the standard of care set forth in N.J.S.A. § 45:9-5.1. That

statute specifies, "Within the meaning of this chapter (45:9-1 et seq.), except as herein

otherwise provided, and except for the purposes of the exemptions hereinafter contained

in sections 45:9-14.1 to 45:9-14.10, inclusive, the phrase "the practice of medicine or

surgery" and the phrase "the practice of medicine and surgery" shall include the practice

of any branch of medicine and/or surgery, and any method of treatment of human

ailment, disease, pain, injury, deformity, mental or physical condition, and the term

"physician and surgeon" or "physician or surgeon" shall be deemed to include

practitioners in any branch of medicine and/or surgery or method of treatment of human

ailment, disease, pain, injury, deformity, mental or physical condition."

125.    In the instant matter, Defendant Scott breached this standard of care when she

engaged in the unauthorized practice of medicine by resetting Mr. Burke's dislocated

shoulder.

126.    Upon information and belief, Defendant Scott caused further injury to Mr. Burke

when she engaged in the unauthorized practice of medicine by resetting the shoulder.

127.    Defendant Scott's failure to comply with this statute breached the standard of care

that is owed to Mr. Burke.

128.    Defendant Scott's failure to comply with the statute is believed to have worsened the

injury she caused to Mr. Burke.

129.    Defendant Scott's failure to comply with these statutes and regulations is the direct

and proximate cause of Mr. Burke's harm and damages.

130.    Mr. Burke has suffered actual medical damages,emotional distress, and other

damages, as result of Defendant Scott breaching these standards of care.

131.    Wherefore, the Plaintiffs pray for relief against the Defendant as hereinafter set forth in the prayer for relief.

## COUNT 11
### ASSAULT
***Mr. Aidan Burke v. Krysten Pierce, Dagney Scott, and Ahnonda***

132.    Plaintiff Aidan Burke hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

133.    Mr. Burke alleges that co-Defendants Pierce, Scott, and Ahnonda assaulted him when:

  a.  Co-Defendants Pierce, Scott, and Ahnonda put Mr. Burke in immediate apprehension of harmful and offensive contact, as set forth in ¶¶28-45.

  b.  The co-Defendants intentionally approached the Plaintiff with the express purpose of making physical contact with Mr. Burke, including illegally restraining him, twisting his arm out of its socket, and resetting his dislocated shoulder.

  c.  The co-Defendants did make harmful contact with Mr. Burke and their approach to him put him in immediate apprehension of harm.

  d.  The co-Defendants' assault is the direct and proximate cause of the Plaintiff's damages.

134.    Wherefore, the Plaintiffs pray for relief against the Defendant as hereinafter set forth in the prayer for relief.

## COUNT 11
### BATTERY
### *Mr. Aidan Burke v Krysten Pierce, Dagney Scott, and Ahnonda*

135.    Plaintiff Aidan Burke hereby realleges all matters set forth in the preceding

paragraphs of this complaint and incorporates them herein.

136.    Mr. Burke alleges that the co-Defendant Pierce, Scott, and Ahnonda committed

battery against him when:

    a.  Co-Defendants Pierce, Scott, and Ahnonda, *inter alia*, illegally restrained Mr.

        Burke, pulled his arm hairs, shoved him into his chair, and dislocated his shoulder.

    b.  Co-Defendant Scott reset Mr. Burke's dislocated shoulder.

    c.  The contact was harmful and offensive and resulted in injuries, which included a

        dislocated shoulder, pain, and mental anguish.

137.    The co-Defendants' battery is the direct and proximate cause of the Plaintiff's

damages.

138.    Wherefore, the Plaintiffs pray for relief against the Defendant as hereinafter set forth

in the prayer for relief.

## DAMAGES

139.    Plaintiffs suffered general, special, incidental, and consequential damages as the

direct and proximate result of the acts and omissions of all Defendants, in an amount that

shall be proven at the time of trial. These damages include, but are not limited to:

damages for general pain and suffering; damages for the loss of enjoyment of life, both

past and future; medical and medical-related expenses, both past and future; travel and

travel-related expenses, both past and future; emotional distress, both past and future;

pharmaceutical expenses, both past and future; and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs  respectfully pray that the court award them compensatory and restitutionary damages against all Defendants for, including, but not limited to, psychological treatment, lost wages, loss of future earnings, loss of enjoyment of life, emotional pain and suffering, interference with their civil rights, and reasonable attorneys' fees and costs of suit. Furthermore, Plaintiffs seek any and all equitable relief,  together with any and all remedies, that the Court deems just and appropriate.

### DEMAND FOR A JURY TRIAL

In accordance with New Jersey and Federal law, Plaintiffs hereby demand a trial by jury on all appropriate issues.

Respectfully submitted,

**THE MONTGOMERY LAW GROUP**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
*Attorneys for Plaintiffs*

*Attorneys for Plaintiff*

Dated: December 1, 2025                    By:/s/Bradley R. Flynn

Bradley R. Flynn
NJ Bar ID No. 173362016